IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOSE ORRACA,

                Plaintiff,

       v.                                                      Civil Action No.
                                                                9:04-CV-01183 (DNH/DEP)

T. McCREERY, *et al.,*

                Defendants.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

JOSE ORRACA, *Pro Se*


FOR DEFENDANTS:

HON. ANDREW M. CUOMO            STEPHEN M. KERWIN, ESQ.
New York State Attorney General       Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

      Plaintiff Jose Orraca, a New York State prison inmate who during

the time of his incarceration has generated considerable litigation in this

and other districts, has commenced this civil rights action pursuant to 42

U.S.C. § 1983 against several New York State Department of Correctional

Services ("DOCS") employees, complaining of constitutional violations

alleged to have occurred during the time of his confinement.[1]  In his

complaint, Orraca asserts claims stemming from various occurrences

during the period of his incarceration, alleging, *inter alia*, 1) the loss of

clothing items and other property; 2) acts of unlawful retaliation, including

the filing of false disciplinary citations; 3) denial of his access to the

courts; and 4) deprivation of due process in connection with various

---

[1]     A search of this court's records reflects the filing by plaintiff of six other lawsuits in this district, in addition to the instant action, arising from the terms of his confinement.  *See Orraca v. Pilatich*, Civil Action No. 9:05-CV-1305 (DNH/GHL) (N.D.N.Y., filed Oct. 14, 2005); *Orraca v. Lee*, Civil Action No. 9:04-CV-1249 (DNH/DRH) (N.D.N.Y., filed Oct. 27, 2004); *Orraca v. Clark*, Civil Action No. 9:00-CV-766 (TJM/GJD) (N.D.N.Y., closed May 11, 2004); *Orraca v. Estabrook*, Civil Action No. 9:99-CV-1216 (NAM/GLS) (N.D.N.Y., closed Mar. 25, 2002); *Orraca v. Maloy*, Civil Action No. 9:96-CV-2000 (NAM/DEP) (N.D.N.Y., closed Mar. 22, 2001); *Orraca v. Walker*, Civil Action No. 6:98-CV-448 (LEK) (N.D.N.Y., closed March 29, 2000).  In addition, it appears that plaintiff has filed at least two suits in the Western District of New York, including *Orraca v. Cetti*, Civil Action No. 96-CV-6385 (DGL/JWF) (W.D.N.Y., filed 1996) and *Orraca v. Kelly*, Civil Action No. 1:95-CV-729 (WMS) (W.D.N.Y., filed 1995). Plaintiff's responsive motion papers also disclose the existence of at least one action commenced by the plaintiff in the Southern District of New York, *Orraca v. Walker*, Civil Action No. 00-CV-5503 (LMM) (S.D.N.Y., filed 2000).  *See* Orraca Decl. (Dkt. No. 32) at 3.  All of the foregoing matters appear to have involved claims associated with his DOCS confinement.  Notwithstanding the commencement of these actions, when asked in the form complaint which he filed with the court in this action whether he had commenced other lawsuits in state or federal court relating to his imprisonment, plaintiff responded that he had not.  *See* Complaint (Dkt. No. 1) § I(a).

2

disciplinary proceedings which have resulted in keeplock or special housing unit ("SHU") confinement and the inability to participate in a prison family reunion program.  As relief, plaintiff seeks recovery of compensatory and punitive damages.

Certain of the plaintiff's claims were previously dismissed by the court based upon the filing of a pre-answer motion by the defendants, including those damage claims asserted against the defendants in their official capacities as well as his claim against defendant Maly, whose personal involvement in the constitutional deprivations at issue was insufficiently alleged.  The remaining defendants in the action have moved for summary judgment, requesting dismissal of the remaining claims both procedurally, based upon plaintiff's alleged failure to exhaust available administrative remedies, and substantively on the merits.  For reasons set forth below, I recommend that the defendants' motion for summary judgment be granted.

I.    BACKGROUND[2]

---

[2]    In light of the procedural posture of the case, the following recitation is drawn from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff.  *See Jeffrey v. City of New York,* 426 F.3d 549, 553 (2d Cir. 2005); *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998); *Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).

Plaintiff is a New York State prison inmate entrusted to the custody of the DOCS; while in the past fifteen years he has been housed in at least eight other prisons, *see* Orraca Aff. (Dkt. No. 55) ¶ 5, at the times relevant to his claims in the action Orraca was designated to the Shawangunk Correctional Facility ("Shawangunk"), located in Walkill, New York, where he was transferred in or about 2000.  *See generally* Complaint (Dkt. No. 1); *see also* Transcript of Orraca Deposition, held on April 2, 2007 (Dkt. No. 53-8) (hereinafter "Orraca Dep.") at 9.

A.   Loss of Personal Property

In or about May of 2002, plaintiff attended a jury trial in an action brought by him in the United States District Court for the Western District of New York.  Kerwin Decl. (Dkt. No. 53-4) Exh. E.  During the course of that trial, plaintiff was apparently permitted by the assigned trial judge to wear civilian clothing supplied by his family, in lieu of his prison garb.  Orraca Dep. at 9-10.  Upon culmination of the trial plaintiff changed back into his prison dress, and his civilian clothes were sent back with him to Shawangunk.  *Id.* at 10.

Once at Shawangunk plaintiff left his civilian clothes at the facility property office, to be picked up by family members on their next visit.

4

Orraca Dep. at 14.   While at the property office plaintiff interfaced with as many as four officers, including defendant T. Nasaveria and Corrections Officer Smith, the DOCS employee in charge of the property room.[3]  *Id.* at 14-15.  When plaintiff's family arrived for its next visit at the facility and sought to retrieve plaintiff's civilian clothing from the trial, it could not be located.  *Id.* at 18.  According to plaintiff's deposition testimony, a formal monetary claim filed by the plaintiff, on advice of the property officer, seeking compensation for the lost clothing was denied.[4]  *Id*. at 19.

### B.   Missing Documents

A portion of plaintiff's complaint relates to missing legal documents, including principally a transcript of his criminal trial.  The legal documents in issue were delivered by plaintiff's wife during September of 2003 to the prison mail room at Shawangunk, where they were later retrieved and signed for by the plaintiff.  Orraca Dep. at 20-22; *see also* Complaint (Dkt. No. 1), Letter dated January 16, 2004 from Janet S. Orraca to

---

[3]    Corrections Officer Smith is not named as a defendant in this action.

[4]    While at his deposition plaintiff testified that the property loss claim was denied, both initially and on appeal to the superintendent, materials submitted by him earlier, in connection with defendants' dismissal motion, contradict his sworn deposition testimony, revealing that the claim was at least partially allowed.  *See* pp. 31-33, *post.*

5

Shawangunk Superintendent J.T. Smith.  According to Orraca, he was in possession of the papers at the time he entered the prison SHU on October 16, 2003, but upon his release back into general population in December of 2003 they were discovered to be missing, and have not since been located.[5]  Orraca Dep. at 24-25.  Although plaintiff attributes the fact that his legal papers are missing to defendants McCreery and M. Bertone, he acknowledges that he has no evidence to link them to the loss.  Orraca Dep. at 30, 70-71.  A grievance filed by Orraca concerning the missing documents was denied.  *See* Orraca Decl. (Dkt. No. 32), Attachment at p. 18.

### C.   Disciplinary Actions Taken Against The Plaintiff

At the heart of plaintiff's complaint in this action are allegedly false misbehavior reports issued against him, leading to disciplinary proceedings and resulting, at least in some instances, in SHU confinement.  Plaintiff alleges that the defendants, including in particular

---

[5]   Plaintiff's deposition testimony concerning the lost transcript is particularly vague.  While he apparently acknowledges having received the lost transcript, and the fact that it was discovered to have been misplaced during one of his various periods of SHU confinement stemming from some fifty misbehavior reports received while at Shawangunk, plaintiff was unable to recall precisely when during those SHU periods of confinement the document was lost.  Orraca Dep. (Dkt. No. 53-8) at 24.

T. McCreery and M. Bertone, issued him false misbehavior reports in retaliation for his having lodged grievances and voiced complaints to their supervisors at Shawangunk.

The record before the court reflects that while at Shawangunk, plaintiff was issued a significant number of misbehavior reports – quantified at various times at between twenty and fifty.[6]  Orraca Dep. (Dkt. No. 58-3) at 24, 30-31.  Prison records also establish that plaintiff was found guilty of violating prison rules, following Tier II or Tier III hearings, on twenty-two separate occasions while at the facility.[7]  DuBray Decl. (Dkt. No. 53-3) ¶ 8.

In his complaint, plaintiff places major emphasis on certain misbehavior reports related to his alleged drug use or failure to cooperate

_____

[6]      Plaintiff's disciplinary record since having entered DOCS custody has been less than exemplary.  Plaintiff's disciplinary history reveals that as a DOCS inmate he has been issued misbehavior reports resulting in Tier II or Tier III disciplinary hearings on approximately eighty-one separate occasions through the end of February, 2007.  DuBray Decl. (Dkt. No. 53-3) Exh. A.

[7]      The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  See Hynes v. Squillace, 143 F.3d 653, 655 (2d Cir.), cert. denied, 525 U.S. 907, 119 S. Ct. 246 (1998).

with required drug testing.  Complaint (Dkt. No. 1) at 2.  Of the various misbehavior reports issued to the plaintiff and sustained following hearings, seven alleged either drug use or urinalysis testing refusals; those seven all resulted in adverse determinations, although only one such finding was administratively appealed.  DuBray Decl. (Dkt. No. 53-3) Exh. A.  Only one misbehavior report charging a drug testing refusal and two accusing Orraca of actual drug usage were issued by defendant McCreery.  *Id*.  Plaintiff maintains that he has no history of drug abuse and is not a user of illicit drugs, arguing that any disciplinary findings of his drug use were based upon submission of adulterated urine samples, and that the inevitability that prison officials will tamper with drug testing specimens given by him has led to his flat refusal to cooperate in drug testing by the DOCS.[8,9]  Complaint (Dkt. No. 1) at 9-10.

II.   PROCEDURAL HISTORY

---

[8]      During his deposition Orraca testified that since his transfer out of Shawangunk he has received two misbehavior reports for urinalysis testing refusal, and that it is his intention to refuse all such testing for the remainder of his prison term. Orraca Dep. (Dkt. No. 53-8) at pp. 43-44.

[9]      Plaintiff's claim not to have been involved in drug use is potentially undermined by a prior finding of drug use on February 5, 1996, while at Great Meadow Correctional Facility, as well as another from Shawangunk dated July 20, 2001, well prior to the events at issue in this instance.  *See* DuBray Decl. (Dkt. No. 53-3) Exh. A.

_____Plaintiff commenced this action on October 14, 2004.  Dkt. No. 1.

Named as defendants in Orraca's complaint are various DOCS

employees, all of whom are or were at the relevant times assigned to

Shawangunk, including T. McCreery, a corrections officer; M. Bertone, a

corrections sergeant; Mr. Andrews, identified as a hearing officer; T.

Nasaveria, a property officer at the facility; Mr. Wright, a corrections

lieutenant; Mr. Maly, the deputy superintendent of security at the prison;

and C. Mayberry, a recreational officer.  *Id*.  Although somewhat difficult to

discern, when liberally construed it appears that plaintiff's complaint

alleges three causes of action, including 1) unlawful retaliation based

upon alleged reprisals for having filed grievances and complaints against

prison officials; 2) denial of court access, based upon the loss of his

transcript and other legal papers; and 3) potentially, the denial of

procedural due process.[10]

---

[10]     Plaintiff's opposition to the pending summary judgment motion makes oblique reference to a potential additional claim nowhere found in his complaint.  In his declaration in opposition to the defendants' motion for summary judgment, the plaintiff provides a brief discussion of "fluid delirium."  Because that discussion appears to be little more than a synopsis of the disorder, it does not rise to the level of an allegation that the plaintiff has any actual physical or mental disorder or that defendants were deliberately indifferent to that condition.  Dkt. No. 55 at 3; Dkt. No. 32 at 3; *see also Leach v. Dufrain*, 103 F. Supp. 2d 542, 546 (N.D.N.Y 200) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)) (discussing medical indifference in general).  Additionally, in the plaintiff's complaint there is also a statement that the defendants "denied [the plaintiff's] religious rights."  *See* Complaint (Dkt. No. 1) at 2.

On April 22, 2005 defendants moved seeking dismissal of portions of plaintiff's claims on a variety of grounds.  Dkt. No. 21.  That motion led to the issuance on February 14, 2006 of a report, later adopted by order issued by District Judge David N. Hurd on April 25, 2006, recommending dismissal of 1) all claims against the defendants in their official capacities; 2) all claims against defendant Maly, with leave to replead, on the basis of lack of personal involvement; and 3) plaintiff's claim for compensatory damages.  Dkt. Nos. 33, 36.

_____Now that pre-trial discovery in the case has concluded, the remaining defendants have moved for summary judgment, arguing that 1) plaintiff's claims are procedurally barred, based upon his failure to exhaust administrative remedies; 2) plaintiff's claims against various defendants are subject to dismissal based upon lack of their personal involvement in the violations alleged; and 3) plaintiff's causes of action for unlawful retaliation, denial of court access, and deprivation of due process are deficient as a matter of law.  Dkt. No. 53.  Plaintiff has since responded in opposition to the motion, asking that it be denied.  Dkt. No. 55.

---

Because there is no further evidence regarding this issue anywhere else in the record, however, I have not addressed the issue of a First Amendment religion claim in this report and recommendation.

10

Defendants' motion, which is now ripe for determination, has been

referred to me for the issuance of a report and recommendation pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of

Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct.

2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247,

106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old*

*Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is

"material", for purposes of this inquiry, if it "might affect the outcome of the

suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at

2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir.

2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the

11

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve

12

any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

   B.   Plaintiff's Failure to Respond to Defendants' Local Rule
        7.1(a)(3) Statement

   In support of their motion, defendants have submitted a comprehensive statement of material facts alleged by them not to be in dispute, as required under Rule 7.1(a)(3) of this court's local rules.[11]  Dkt. No. 53-7.  While plaintiff has filed papers in opposition to defendants' motion, he did not include among them a response to defendants' Local Rule 7.1(a)(3) Statement.

─────────────────

   [11]   That rule provides, in pertinent part, that "[a]ny motion for summary judgment shall contain a Statement of Material Facts [which] shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue.  Each fact listed shall set forth a specific citation to the record where the fact is established. . . ."  N.D.N.Y.L.R. 7.1(a)(3).

This court's local rules require that any party opposing a motion for summary judgment must file a response to the moving party's statement of material facts, mirroring the statement and specifically admitting or denying each of the numbered paragraphs.  N.D.N.Y.L.R. 7.1(a)(3).  The rule goes on to provide that "any facts set forth in the Statement Material Facts shall be deemed admitted unless specifically controverted by the opposing party." *Id.* (emphasis omitted).

It is readily apparent that plaintiff's papers in opposition to the defendants' summary judgment motion fail to comply with this meaningful requirement.  Courts in this district have uniformly enforced Rule 7.1(a)(3) and its predecessor, Rule 7.1(f), by deeming facts set forth in a moving party's statement to have been admitted in similar circumstances, where the party opposing the motion has failed to properly respond.  *See, e.g., Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing case); *see also Monahan v. New York City Dep't. Of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).  In light of plaintiff's demurrer in connection with defendants' Local Rule 7.1(a)(3) Statement, I recommend that the court consider each of the facts asserted in it to

14

have been deemed admitted by the plaintiff, for purposes of the instant motion.

###    C.    Exhaustion of Remedies

In their motion defendants assert that plaintiff's claims are procedurally barred based upon his failure to exhaust available administrative remedies.  This portion of defendants' motion essentially reiterates an argument raised earlier by the defendants in connection with their pre-answer dismissal motion, but rejected at that point based principally upon the procedural posture of the case and the equivocal nature of the limited record then before the court concerning the issue.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]"  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record."  *Jones v. Bock,* 549 U.S. 199, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit.

*Jones,* 127 S. Ct. at 918.  In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).  "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA.  *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

　　　The primary mechanism made available to New York state prison inmates for presenting grievances concerning prison conditions is the

Inmate Grievance Program ("IGP") established by the DOCS and recognized by the courts as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).

The IGP consists of a three-step review process. First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[12]  7 N.Y.C.R.R. § 701.5(a). The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. *Id.* §§ 701.4(b), 701.5(b). If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* § 701.5(c). The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision. *Id.* § 701.5(d). Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal

---

[12]     The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002)

(citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284,

at *3 (S.D.N.Y. Dec. 11, 2000)).

The evidence now before the court regarding exhaustion is sparse.

Defendants' moving papers do not include an affidavit, of the type

normally submitted when failure to exhaust is relied upon as a ground for

dismissal of an inmate's claims, from a representative of the CORC or

some other DOCS employee familiar with prison records attesting that no

record exists of the plaintiff's filing and pursuit of a relevant grievance to

the final step under the IGP.

Plaintiff's statements concerning exhaustion are equivocal, and thus

similarly unrevealing.  Responding to questions set forth in his form

complaint, Orraca answered both "yes" and "no" to inquiries regarding

both the existence of a grievance procedure at Shawangunk and his filing

of grievances related to the matters set forth in his complaint.  Complaint

(Dkt. No. 1) at 4.  When asked to describe the steps taken to present

grievances relating to the matters in suit, plaintiff answered that

"[g]rievance does not provide relief that I am seeking."  *Id.*  Responding to

an inquiry regarding the result of his grievance filings, plaintiff stated that

> [a]llegations of employee harassment/
> discrimination are of particular concern to the
> administrators of department facilities.  Prison
> Directive 4040 (VII) after exercising initial
> obligations (reported the incidents to supervisors
> first) after being again threaten [sic] plaintiff was
> discouraged to process with this complaint any
> further with the facility out of fear for his safety.

*Id.*

As was previously noted, failure to exhaust represents an affirmative defense which must be raised and proven by the defendants in an action brought by a prison inmate.  *Jones*, 127 S.Ct. at 918; *Mendez v. Barlow*, No. 04-CV-1030S, 2008 WL 2039499, at *3 (W.D.N.Y. May 12, 2008) (citing *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) and *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999)).  In this instance, defendants have failed to satisfy their burden of establishing the lack of any genuine issue of material fact concerning plaintiff's failure to exhaust available administrative remedies by grieving one or more of the matters now at issue.  I therefore recommend against dismissal of plaintiff's claims based on this alleged procedural shortcoming.[13]

---

[13]    Citing cases which predate the Supreme Court's decision in *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002), plaintiff argues that the PLRA does not require exhaustion of remedies in connection with claims brought by prison inmates alleging retaliation against them by prison officials.  Orraca Aff. (Dkt. No. 55) at p. 4.  Plaintiff is clearly mistaken in this assertion.  42 U.S.C. § 1997e(a); *Woodford*,

### D.   Personal Involvement

Defendants next argue that plaintiff cannot establish the requisite degree of their personal involvement in the constitutional deprivations alleged in his complaint.  While generally stating the correct controlling legal principles, defendants' personal involvement point is lacking in specifics regarding the defendants to whom the argument applies.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Nothing in the record before the court implicates the involvement of any of the named defendants in this action in connection with the loss of plaintiff's civilian clothing and legal papers.  During his deposition Orraca

548 U.S. at 84, 126 S. Ct. At 2382; *Hargrove*, 2007 WL 389003, at *5-6.

acknowledged that none of the named defendants were involved in his escort to and from the civil trial at which the lost clothing was worn. Orraca Dep. (Dkt. No. 53-8) at 11.  At no point during his deposition or in the other submissions to the court has Orraca alleged the direct involvement of any of the named defendants in the loss or destruction of his property.

Similarly, plaintiff has acknowledged that he can cite to no evidence to establish that defendants McCreery or Bertone were involved in the loss or destruction of his legal papers, including his criminal trial transcript, nor does the record disclose any evidence which a reasonable factfinder could conclude that any of the named defendants in this action were involved in that loss.  While the plaintiff may suspect that one or more of the defendants orchestrated or was involved in the misplacement, as he has readily acknowledged he lacks evidence to support his hunch.  I therefore recommend dismissal of plaintiff's claims surrounding the loss of his civilian clothes and legal documents on the basis of lack of personal involvement on the part of any of the named defendants.[14]

---

[14]     Leaving aside the issue of potential interference with his access to the courts, it is extremely unlikely, in any event, that plaintiff could establish a constitutional deprivation based upon the fact of his missing legal papers and clothing, particularly given the availability of recourse to seek compensation for the losses.  *See*

22

E.    Unlawful Retaliation Claim

Noting that claims of unlawful retaliation, particularly those growing

out of the issuance of misbehavior reports, are easily incanted by prison

inmates, and that accordingly "courts must approach prison claims of

retaliation with skepticism and particular care[,]" *Dawes v. Walker*, 239

F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v.*

*Sorema*, N.A., 534 U.S. 506, 122 S. Ct. 992 (2002), defendants seek

dismissal of plaintiff's retaliation claims as a matter of law.  In support of

their motion defendants argue that the record lacks any evidence from

which a reasonable factfinder could conclude that the issuance of the

various misbehavior reports to the plaintiff, most if not all of which resulted

in findings of guilt following disciplinary hearings, was motivated by

retaliatory animus.

In order to state a *prima facie* claim under section 1983 for

retaliatory conduct, a plaintiff must advance non-conclusory allegations

establishing that (1) the conduct at issue was protected; (2) the

---

*Fisher v. Dep't of Corr.*, No. 92 Civ. 6037, 1995 WL 608379, at *8 (S.D.N.Y. Oct. 16,
1995) (indicating that when a prison inmate merely alleges a deprivation of personal
property, no civil rights action lies where the state provides a compensatory remedy);
*Smith v. City of New York*, No. 03 Civ. 7576, 2005 WL 1026551, at *8 (S.D.N.Y. May
3, 2005) (noting that New York provides inmates with the opportunity for a hearing to
pursue state law causes of action for negligence, replevin, and conversion).

defendants took adverse action against the plaintiff; and (3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes*, 239 F.3d at 492 (2d Cir. 2001).  If the plaintiff carries this burden, the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  If taken for both proper and improper reasons, then, state action may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

Standing alone, the mere allegation that a false misbehavior report has been filed against an inmate does not implicate constitutional considerations.  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988)).  The further assertion that issuance of

the false misbehavior report was prompted by retaliatory animus and relates to an inmate having engaged in protected activity, however, can suffice to state a claim for retaliation. *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).

In their motion defendants do not dispute either plaintiff's filing of grievances and lodging of complaints or the fact that those actions constitute protected conduct under the First Amendment. Similarly, defendants do not challenge plaintiff's assertion that the resulting disciplinary confinements represented adverse action sufficient to satisfy that prong of the retaliation analysis. Defendants argue, however, that the record is lacking in evidence to establish the requisite nexus between the two.

The determination of whether a sufficient causal connection between protected conduct and adverse action has been established is informed by a number of factors, including 1) the proximity between the two; 2) the inmate's prior disciplinary record; 3) whether there was ultimate vindication of the plaintiff following the disciplinary hearing; and 4) whether statements were made by the particular defendant disclosing an improper motive for disciplining the inmate. *Rivera v. Goord*, 199 F. Supp.

2d 327, 339 (S.D.N.Y. 2000); *see also Barclay v. New York*, 447 F. Supp. 2d 546, 558 (N.D.N.Y. 2007).  Analysis of the chronology of events for purposes of making this analysis in this case is made difficult by virtue of plaintiff's failure to pinpoint the timing of the grievances and other complaints which, he maintains, triggered the ensuing disciplinary actions. In his complaint plaintiff appears to attribute the retaliatory animus to his having filed complaints regarding his lost clothing, and later the missing transcript.  Plaintiff's lost clothing claim dates back to May of 2002.  While it is unclear when plaintiff detected and subsequently complained of the loss of his legal papers and transcripts, it appears fairly certain that he did not become aware of the loss until his release from the SHU back into general population at Shawangunk on or about December 31, 2003.

When considered against this backdrop, an analysis of the timing of the issuance of the controlling disciplinary actions does not support an inference of retaliatory motivation.  The first misbehavior report issued by defendant McCreery related to alleged drug use or urinalysis testing refusal is dated October 8, 2003, some sixteen months after the loss of clothing occurred and prior to plaintiff's discovery of the missing

26

transcript.[15]  DuBray Decl. (Dkt. No. 53-3) Exh. A.

It is true that plaintiff did receive misbehavior reports on January 7, 2004, and again February 25, 2004, both issued by defendant McCreery, alleging urinalysis refusal and drug use, respectively, and those misbehavior reports were issued shortly following plaintiff's release from SHU confinement, and thus presumably after his discovery of the allegedly missing transcript.  Those disciplinary citations, however, are consistent with a prior established pattern of this conduct on plaintiff's part.  Given his poor disciplinary record and the findings of guilt with regard to both of those misbehavior reports, and without any other evidence tending to establish retaliating animus as a motivation for their issuance, no reasonable fact finder could conclude that they were issued out of retaliatory animus, as opposed to being based upon plaintiff's refusal to comply with prison rules and legitimate demands of corrections officers.

Evaluation of claims of retaliation is a particularly fact-laden

---

[15]     That misbehavior report was not the first issued to plaintiff while at Shawangunk, alleging drug use.  On July 20, 2001, Corrections Officer Bunce issued a Tier III disciplinary report to the plaintiff alleging drug use, leading to a period of disciplinary keeplock confinement, with corresponding loss of privileges, for one hundred eighty days.  DuBray Decl. (Dkt. No. 53-3) Exh. A.

exercise, since such claims revolve around both the engaging in protected conduct, as well as establishment of a nexus between that conduct and the adverse action ultimately taken.  Because plaintiff's retaliation claims against defendants McCreery and Bertone have been alleged in only conclusory fashion, and are not supported by evidence now in the record tending to establish a nexus between any protected activity and the adverse actions complained of, I recommend that defendants' motion for summary judgment dismissing plaintiff's retaliation claims be granted.[16] *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

> F.    Plaintiff's Court Access Denial Claim

Liberally construed, plaintiff's allegations regarding the missing legal documents and transcript could be considered to assert a First Amendment claim for denial of court access.  Assuming that plaintiff could establish the involvement of one or more of the named defendants in the action in that loss, defendants nonetheless assert that plaintiff's court access claim is subject to dismissal on the merits.

---

[16]    The record contains no evidence of any involvement on the part of the remaining defendants named, including defendants Nasaveria, Andrews, Wright, and Mayberry, in the issuance of allegedly false, retaliatory misbehavior reports.  Those defendants are therefore entitled to dismissal of plaintiff's retaliation claims against them on the additional, independent ground of lack of personal involvement.  *See Wright*, 21 F.3d at 501; *Bass*, 790 F.2d at 263.

Without question, an inmate's constitutional right to "meaningful" access to the courts is firmly established. *Bounds v. Smith*, 430 U.S. 817, 823, 97 S. Ct. 1491, 1495 (1977) (citations and internal quotation marks omitted).  To establish a violation of the right of access to the courts, a plaintiff must demonstrate that defendants' interference caused him or her actual injury – that is, that a "nonfrivolous legal claim had been frustrated or was being impeded" as a result of defendants' conduct. *Lewis v. Casey*, 518 U.S. 343, 353, 116 S. Ct. 2174, 2181 (1996)*.

In the face of defendants' motion, plaintiff argues only that it is "impossible to continue to be able to properly represent himself in the court of law . . ." without his records.  *See* Orraca Aff. (Dkt. No. 55) ¶ 10. Such an assertion, without more, is insufficient to establish prejudice resulting from the loss or unavailability of court documents.[17]  Because

---

[17]     Since the process of securing direct review of plaintiff's criminal conviction has ended, there is therefore no need for a transcript in connection with that appeal. *See* Kerwin Aff. (Dkt. No. 53-4) Exh. F.  Similarly, it appears that the transcript of plaintiff's criminal trial was already entered into the record in connection with his habeas corpus petition, which has been fully briefed and is awaiting decision from a state court. *Id.* at Exh. D.  In his deposition, plaintiff seemingly took the position that the loss of his transcript has interfered with or impeded his ability to file a motion under Article 440 of the N.Y. Criminal Procedure Law to vacate his judgment and set aside the corresponding sentence.  See Orraca Dep. (Dkt. No. 53-8) at p. 23.  Such a conclusory allegation, however, is insufficient to show prejudice resulting from the loss of the transcript. *See Arce v. Walker*, 58 F. Supp. 2d 39, 44 (W.D.N.Y. 1999) ("A prisoner's conclusory assertion that he suffered prejudice does not suffice to support an access to court claim.").

plaintiff has failed to establish the requisite prejudice resulting from defendants' actions, I recommend dismissal of his First Amendment court access denial claims as a matter of law.

      G.   <u>Denial of Due Process</u>

Although this is far from clear, plaintiff also appears to contend that during the course of the various disciplinary proceedings against him defendants deprived him of procedural due process.  Defendants also seek dismissal of this potential claim as a matter of law, assuming that the requisite level of personal involvement on the part of the defendants in the conduct forming the basis for that claim could otherwise be demonstrated.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

Plaintiff's due process claims, although not artfully stated, appear to

30

have three distinct components, involving the deprivation of his rights to conjugal visits or participation in the Family Reunion Program ("FRP"), the destruction or theft of his property, and the various disciplinary proceedings against him.

### 1. Conjugal Visits / FRP Denial

It is well-established that inmates in New York have no cognizable liberty interest in denial of conjugal visits or participation in the FRP. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *Hernandez v. Coughlin*, 18 F.3d 133, 136-38 (2d Cir. 1994); *see also McEachin v. Bek*, No. 06-CV-6453CJS, 2007 WL 529626, at *2 (W.D.N.Y. Feb. 12, 2007) (noting that "contact visits are a privilege for inmates, not a right"). Accordingly, plaintiff cannot claim deprivation of procedural due process stemming from a denial of his ability to participate in the FRP.[18]

### 2. Due Process and Theft and/or Destruction of Plaintiff's Personal Property and Transcripts

Generally speaking, neither negligent nor intentional deprivations of inmate property are sufficient to trigger the protections of the due process clause of the Fourteenth Amendment, provided that there exists an

---

[18] As was previously noted, there has been no sufficient allegation of personal involvement of any of the defendants regarding the plaintiff's inability to participate in the FRP.  *See* pp. 21-22, *ante.*

31

"adequate post-deprivation remed[y] for addressing such circumstances. . . ." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 3203-04 (1984). Because a state cannot anticipate when such negligent or intentional destruction of property will occur, "'predeprivation procedures' are simply 'impracticable.'" *Id.*; *see also DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (noting that in such claims, where it is "impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding."). Accordingly, plaintiff's due process claim turns upon whether or not an adequate post-deprivation remedy has been made available to him in connection with the property losses alleged.

a.   Plaintiff's Personal Property

Addressing first the loss of his personal clothing, I note that Orraca has made no allegation that the post-deprivation remedy available to him has proven inadequate.  Indeed, plaintiff's claim for his lost property (#35-02) appears to have been approved in the amount of $199.00, following an internal investigation at Shawangunk. *See* Dkt. No. 32 at 7-10. The record lacks any evidence as to whether or not the plaintiff has accepted this amount and, more importantly, any allegations that this amount is in

32

any way inadequate.[19]  Plaintiff therefore cannot maintain a cognizable

due process claim resulting from the loss of his personal property.  *See*

*Smith v. O'Connor*, 901 F. Supp. 644, 647 (S.D.N.Y. 1995).

b.    Plaintiff's Transcripts

Plaintiff's claim of due process violation growing out of his lost legal

records is also unavailing under New York law, inmates are afforded an

adequate post-deprivation remedy for such losses - the opportunity to

bring an action in the Court of Claims.  *See Jackson v. Burke*, 256 F.3d

93, 96 (2d Cir. 2001). Plaintiff has provided no evidence that any claim

has been brought in the Court of Claims, despite apparently having been

notified of his ability to do so.  *See* Dkt. No 32 at 10 (document pertaining

to plaintiff's claim for lost property with the line "[i]f you are unwilling to

accept this offer in full settlement of the claim, your remaining option is to

pursue the claim in the Court of Claims").  The failure of Orraca to avail

himself of that opportunity precludes his right to recover in this action

under section 1983.  *Id.* (citing *Love v. Coughlin*, 714 F.2d 207, 208-09

(2d Cir 1983)).  This loss therefore also fails to support a due process

---

[19]      In his claim plaintiff estimated the value of his lost clothing items at
$2,245.00. *See* Dkt. No. 32 at 7.  Plaintiff has not explicitly taken issue with the
$199.00 figure, however, nor has he given any indication as to whether or not the
claim was ultimately settled.

violation claim.

c.    Disciplinary Confinement

While the evidence is far from unequivocal, it appears that as a result of the various disciplinary proceeding plaintiff did experience periods of SHU disciplinary confinement which, under controlling law, could be considered as deprivations of a cognizable liberty interest, sufficient to trigger the provided due process protections of the Fifth Amendment. *See Colon v. Howard*, 215 F.3d 227, 230-32 (2d Cir. 2000). Those claims appear to pertain particularly to defendant Wright, who presided over several of plaintiff's various disciplinary hearings.[20] *See* Orraca Dep. (Dkt. No. 53-8) at pp. 50-52, 60.

The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well-established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 564-67, 94 S. Ct. 2963,

---

[20]    Plaintiff appears to have also asserted a due process claim against defendant Andrews, based upon his role as a hearing officer. Andrews, however, did not serve as the hearing officer in connection with any of the allegedly retaliatory misbehavior reports. DuBray Decl. (Dkt. No. 53-3) Exh. A. While defendant Andrews did serve as a hearing officer assigned to address charges arising from and incident occurring on July 10, 2002, that was long before the alleged campaign of retaliation commenced, and plaintiff himself has admitted having no due process deprivation against either defendant Andrews or Mayberry. Orraca Dep. (Dkt. No. 53-8) at 49, 62-63.

2978-80 (1974).   Under *Wolff,* the constitutionally mandated due process requirements, include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense.  *Wolff*, 418 U.S. at 564-67, 94 S. Ct. At 2978-80; *see also Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988).

The record in this case fails to reveal any evidence that plaintiff did not receive the constitutionally minimum due process mandated under *Wolff*.  *See generally* Kerwin Aff. (Dkt. No. 53-4) Exh. A at pp. 34-53; *see also* Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 53-7) ¶ 106. Accordingly, plaintiff's procedural due process claims against defendant Wright are deficient as a matter of law.

IV.   SUMMARY AND RECOMMENDATION

_____Plaintiff's complaint asserts a variety of constitutional claims arising from his receipt of disciplinary citations and the loss of his clothing and court transcripts.  Despite those allegations, however, the record fails to

35

disclose any involvement on the part of the majority of the defendants and any of the actions forming the basis for plaintiff's claims.  In any event, plaintiff's claims for unlawful retaliation, denial of court access, and deprivation of procedural due process, are all deficient as a matter of law, and no reasonable factfinder could conclude otherwise.  Accordingly, it is hereby

RECOMMENDED, that defendant's motion for summary judgment (Dkt. No. 53) be GRANTED, and all remaining claims contained within plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    July 21, 2008
          Syracuse, NY

David E. Peebles
U.S. Magistrate Judge